Van Brunt, P. J.
The appellant bases his appeal upon the grounds that there is no evidence that the plaintiff had complied with his contract and that error was committed in the admission of evidence.
The plaintiff gave evidence tending to show that in the-month of October, 1884, the defendants were engaged in furnishing an additional water supply for the city of Brooklyn, and it became necessary to build a pumping house, which was to be located on swampy ground about five feet below the ordinary level of moisture.
Mr. Wundrain was an engineer in the department of city works in Brooklyn and had charge of the construction, of these works.
*19 At the request of Mr. Wundrum, Mr. Van Orden, one of the plaintiffs, went to Springfield, Long Island, where said works were to be constructed, and met Mr. Wundrum and Mr. George H. Andrews, one of the defendants.
Mr. Andrews pointed out to Mr. Van Orden an excavation in a swamp which his men were then working upon, and said to him that they wanted to make that about a foot deeper than it was, and that they wanted to build a brick pump-house and engine-room there, and that they wanted him to put his water-proof material under the bottom of that excavation and bring it up on the sides after they had built the walls just the same as he had done on a job over in Hoboken for the Hamburg Packet Company, and asked what will it cost to do that ?
Mr. Van Orden said he would look over the situation"and send an estimate.
The parties then had some talk about the foundation and as to who should keep the water out while work was going on, in the course of which Mr. Andrews told Mr. Van Orden that Mr. Wundrum had charge of this for them and that whatever he did or said was to be the same as if he did it. Mr. Van Orden prepared an estimate and submitted it, and after considerable bargaining, an agreement was arrived at.
After the foundation- was done, the brick walls were started, and Mr. Van Orden saw them run a cross wall about-two-thirds of the way down, and he told Mr. Wundrum. that he did not know about those corners where the partition wall was going to cross, and that if he did not give a. straight line that he would have trouble—that he might have dampness. That if they wanted it tight they must run their wall straight on the outside, and they said that they could not do that, and held a sort of council of war amongst the masons, and one of them said he could fix the corner so that there would be no trouble, and they said that they would take all the risk of that. After the walls were up, the water-proofing was carried up four or five feet all around in absolute perfect order, and the job was finished about November twenty-ninth. '
About a week or ten days afterwards Mr. Van Orden went down to the pumping-house at the request of Mr. Andrews, and he showed him some places where he said the water-proofing had blistered from the walls, and Mr. Van Orden said that this was occasioned by the failure to fill up against the sheathing as Mr. Andrews had promised, to do.
Upon another part of the building it was found that the sheathing had been injured by workmen.
Repairs were made and the sheathing, by direction of Mr. *20 Andrews, was carried up further than the original contract provided. Mr. Andrews called upon Mr. Van Orden about twenty-ninth of July, and said that they had a very good job there, but there was a small leak, which he thought he could fix easily. Mr. Van Orden went down, and after examination and. discussion with Mr. Andrews as to whether there was a leak, it was tested and found to leak.
Arrangements were made to dig around the building, and it was found that the filling put in by the defendants around the building, instead of being sand, was stones, brickbats and wood which had knocked holes in the water-proofing, and that the water-proofing had been torn off below the pipes. Repairs were made. Wundrum examined the work and pronounced it a good job.
Mr. Andrews again sent for Mr. Van Orden about a week or ten days after, and showed a small leak, which was found to have been caused by the water-proof being cut, which was repaired.
Mr. Van Orden then requested to have permission to re-examine the west wall, so as to be sure that that was all right, which Mr. Andrews refused to allow the plaintiff to do, and- the plaintiff left the job. The building was visited afterwards and found dry, although water on outside.
Workmen also were examined showing the quality of the work, and that the water-proofing was injured in many places by the carelessness of the defendant’s servants, and proof was offered to show, which was objected to) that this sheathing had been used in other places and found water tight.
The defendants offered evidence tending jo show that the sheathing was never tight, that it always leaked, and claimed that the evidence of the defendants’ witnesses as te their examination was worthless, because at the time of their examination the pumping machinery was in operation, which exhausted the water around the building and caused it to be dry.
The learned court charged the jury that it was the duty of Mr. Van Orden to make a water-tight flooring, and that before he was entitled to recover he must satisfy them that the work was skillfully performed and water-tight, and also that if they came to the conclusión that it was watertight and that it was not through any negligence or want of skill on the plaintiff’s part that it subsequently leaked, then the plaintiff was entitled to recover, but if they found that the work was not water-tight, then the plaintiff could not recover.
The learned court then charged the jury, at the request of plaintiff’s counsel, that if the contract was modified by *21 an agreement that the plaintiff should not assume the risk of the extended wall, that to that extent he was released from the guarantee
This proposition was excepted to, and it is claimed that as there is no evidence that the water came in there, such a modification could not reheve the plaintiff.
The plaintiff gave evidence from which the jury could very well find that the sheathing was water-tight when properly applied.
They] also proved that the work was well done, and from the evidence the jury had a right to assume that if there was a leak that it did not arise from any imperfection of the plaintiff’s work.
The proof of the piaintiff tended to establish that the work after it was done was injured by the negligence of the defendant in not filling in around the sheathing properly, whereby the sheathing was injured.
The court submitted all these questions arising upon the conflicting testimony, and the jury found for the plaintiff, and this verdict we see no sufficient reasons to disturb.
The objection as to the working of the sheathing, when applied to other places, is not well taken.
The plaintiff, had a right to prove that the sheathing was water tight, had been proved to be so by repeated trials and that the material used was capable of making a watertight sheathing when properly applied.
The jury had the right to infer if this sheathing was proved to their satisfaction to be water-tight when properly applied, and if it was also proved to their satisfaction that it was properly applied, that the leaks came from the parts as to which the defendants, through Wundrum, agreed to take the risk, or through some place where the sheathing had been injured by the carelessness of the defendants’ servants, the plaintiff’s proofs tending to show that it was so injured in many places, which were repaired.
If there had been no evidence of this kind and no evidence as to the defendants taking the risk as to any part of the wall, it would certainly follow that the evidence that a leak existed would prove conclusively that the fault was the plaintiff’s. But the jury could find, from the evidence, that a leak did exist, and yet that it was not caused by the negligence of the plaintiff. The cases cited by the defendants’ counsel does not seem to conflict with this view.
The case of Fillo v. Jones (4 Keyes, 328), so strongly relied upon by the appellants’ counsel to sustain his exception, seems to be exactly in point as claimed, but sustains the ruling of the learned court below instead of showing it to be erroneous.
In that case, which was an action brought to recover *22 damages alleged to have resulted from the spontaneous combustion of certain fireworks known as “signal lights,” kept by the defendant on the premises, evidence was admitted, under objection by the defendant, as to the circumstances attending two fires that occurred several years before, and the opinion of the witness was given that those fires were occasioned by the spontaneous combustion of fireworks, and the court held that the evidence was improperly admitted, being altogether foreign to the issues of the action, no effort being made to connect the events by showing that the fireworks of the defendant were similar to those that occasioned those fires.
An expert was also examined in that case and was permitted to testify that he had analyzed other signal lights, made two years before by the same manufacturer, and to give results; this was held error because no proof was given that the signal lights analyzed were composed of the same materials as those alleged to have caused the fire.
In the case at bar the proof is that the water-proof material used in other places was the same as that used in defendants’ building.
No error was, therefore, committed upon the trial, and judgment and order appealed from must be affirmed.
Brady and Daniels, JJ., concur.